Good morning. My name is John Pope, P.O.P.E. I am the attorney for the petitioner, Mr. Salazar-Carmona. This would be 10-851-A-2. This case, Your Honor, shows that exactly what you were just talking about. Well, you're in a different posture than the other cases that we have. Yes, ma'am. I have a second issue, obviously, which is ineffective assistance of counsel and where we go with that. But I thought I would try to build on the arguments that have just been had here. Your guy says, I drove the vehicle. That's exactly right, sir. Why isn't that proof that he drove the vehicle? He could have driven the vehicle well after it was stolen, which is exactly what his testimony was. Would that still be a theft offense? I believe it would be an accessory after the fact. He drove the car well after. These people picked him up is what his testimony was. He was not part of the taking of the car, which truly throws it into the area of divisibility. Is he an after the fact? I think it's an evidentiary question that has to be answered. And I don't believe the record of conviction supports the conclusion that he was the taker or an aggravated felon. Well, he the additional problem that I have in your case, let's just even for a moment, assuming that maybe he could prevail on that point. His goes back to a motion to reopen for IAC. That's correct. And he has, in my view, there are issues about his diligence in pursuing this. And so let's just assume even on the other end that if, you know, if other cases shake out, that you could prevail on this. You have a guy that is way long time ago, doesn't do anything, sits on his hands. And we talk about there's nothing that would indicate that any of this would be retroactive. And so why would he be in a bit if he didn't do anything that we're going to go back to all of these convictions and give people relief when they don't? You know, because he did nothing. And now he's trying to claim the benefit of a law, you know, but five, seven, whatever years later. I understand the court's point. And I believe that the issue really here is the actions of his counsel. Mr. Votter. Well, let's see, in immigration cases, you know, the person that's being removed has no motivation to do anything about it, because they can always hope as long as they sort of like possessions, nine tenths of the law. You know, being here is nine tenths of the law. So stay here as long as you can. Don't do anything. If no one, you know, don't take have any diligence about your case, because maybe you can help. At some point, Congress is going to pass something that would help you out. And then on the other hand, you have the people that legitimately follow the law, handle their cases diligently in terms of doing something. And then they're in Mexico now and they can't do anything about it. You know, that's I mean, we have to think about that, too. I think what distinguishes this, though, Your Honor, is that this attorney was blatant about what he did. He filed an appeal. Well, he was blatant, but your client was blatant about doing nothing for a very long time. I would disagree, ma'am. He filed his appeal in 2002. He then lost track of vaughter. And at the time, the cycle time for being. He lost track of his attorney, the man who filed the appeal and then subsequently withdrew it without ever asking his permission to do so. When?  When? I'm not understanding when, sir. There's not a whisper in this record of when he lost track of his attorney. Nothing. He was never told by his attorney. You said he lost track of his attorney. Oh, I'm sorry, Your Honor. I'm not saying what his attorney. I think your words were he lost track of his attorney. I said there's not a word here of when he did it. If he lost track of his attorney a month after this happened, then he certainly wasn't very diligent. If he didn't lose track of his attorney for three years, that's something different. So I'm saying when did he lose track of his attorney? The point that he understood he had a problem when he found out that the attorney had been suspended from practice in the State of California and before the EOIR. At this point, leave him. It went in the record. Sorry. Suspended for 90 days. And. Period. Then he, that is the point at which he consulted our firm. This was in 2005. So there was about a two-year hiatus from the time he actually filed the appeal until he came to us. Well, his attorney was suspended in 2004, I understand. But that doesn't mean he was diligent. Your Honor. I think the point that the Court needs to understand is at that time, before the BIA modernized its processes, it would normally take from two to three years to get a decision. So it was not unusual for a client not to chase a lawyer over a decision in those days. Now, once the reform went through, and it's now, the cycle time has been reduced to three years, reduced to about anywhere from eight months to a year, it would be a different situation. But I don't think he acted unreasonably here. When he found out that his attorney was suspended, he sought other counsel. Other counsel then attempted to obtain all his records. No records could be obtained from the attorney. Four FOIAs were filed on his behalf. It took a year and a half to get a complete file. And a month later, a motion to reopen was filed based on ineffective assistance of counsel. I don't see how that's not due diligence. Well, the record is pretty sparse about what your client did between 2002 and 2005. But let's say if Mr. Vauder had filed the appellate brief, wouldn't Mr. Salazar have simply been removed earlier based on the prevailing law at that time of the appeal? And if so, how can this constitute prejudice? Your Honor, I believe you have to look at the Pannulliar case. Pannulliar was – But it didn't exist back then. If the appellate brief had handled back – if it was filed back then, he would have lost, he would have been gone, and there would be no prejudice. If I may, Your Honor. The point I was trying to make was Pannulliar and Salazar were almost contemporaneous. They could have been a joint – the cases could have been joined at the Ninth Circuit if Vauder had done his job. Vauder didn't. Pannulliar's attorney did. And at almost the same time in history, they were both convicted. They both were removed. They both went to the BIA. But Vauder never filed a brief, and then Vauder, in November of 2002, withdrew the appeal. So he had no chance to go forward with his claim. I guess the other thing is, too, why was it – why would it have been futile for your client to comply with Lozada and file a complaint against Mr. Vauder? Because he was already suspended. But the suspension was lifted in 2004 before Mr. Salazar even obtained new counsel. But no one could find Mr. Vauder. That doesn't stop you from filing a complaint. I understand that, Your Honor. But it would be fairly futile if the man is not around to file a complaint. I don't know what's futile about that, filing a complaint with the State Bar. In this case, I believe it would have been, sir. Well, I understand what you believe. But the question is, why wouldn't somebody just go ahead and file a complaint with the State Bar? I can't answer the question for him. Do you want to reserve some time for rebuttal? Yes, sir. Thank you. You've got about a minute. Thank you. Katherine Clark, appearing on behalf of the Attorney General. Whatever the status of the law regarding Tenet 51 convictions, as of today, Salazar failed to overcome that first hurdle necessary to obtain equitable tolling of the filing deadline for his motion to reopen. He did not show due diligence during the three-year period after his previous counsel, Attorney Vauder, filed the appeal to the board. Well, let me ask you this in terms of, I think, factually, I mean, we do a lot of these cases. But, of course, we don't see as many as that go to the immigration judges. But, you know, factually, this is a fairly sympathetic case. And, essentially, what you have is a senior joyrider. You've got a guy that, you know, I mean, I was just before court, I was thinking he's been an LPR longer than most of my law clerks have been alive. And so in his 60s, much to, I'm sure, to the chagrin of his family, he goes out and gets a Tenet 51. If you lose on the legal issues right now and we were to say that you can't establish that this is an aggravated felony, would that change how you would look at this case? No, because due diligence is dispositive here. And, additionally, despite the length of, in terms of equities, despite the length of petitioner's time as a lawful permanent resident, he never applied to naturalize. He could have made it so, by naturalizing, he could have made it so that any Tenet 51 conviction would not have resulted in removal. In what way was he not diligent? He files an appeal in June of 2002. Is that right? That is, the appeal before the board, I believe, was in June 2002, yes. Okay. And then in 2004, he discovers that his lawyer is out of the picture somehow? He, in both his brief and his motion to reopen, he claims that he discovered that when he received a response to his FOIA, that that time period has been shifting back and forth all over the place. Well, what should he have been doing? How long does it take the board sometimes two, three, four years to decide a case, right? That may be so. However, he … Okay, so he's got a lawyer who he thinks is handling the case. Two years go by, and he hasn't heard from the board. What is he … What should he have done to be more diligent than wait for the mailman to deliver the decision? The court has required additional action during exactly the period of time when Petitioner was waiting. An obvio de leon decided in 2005 the court required the alien inquired with the immigration court to determine the status of his case. It's not enough that he has a lawyer who's supposed to be handling this for him? The aliens in both obvio de leon and Singh v. Gonzalez in 2003, Singh, both were represented, whether by lawyers or individuals holding them. So, in other words, if I understand you correctly, if you have a lawyer who's handling an appeal, and it's still within the time that you'd expect the court to have it under advisement, the board under advisement, he's supposed to call the board every day or two and see whether they've decided his case? This is not an issue of every day or two. This is an issue of over two years. That's what I'm saying, but it was still within the time in which they take to decide a case. Yes, but the court has held in cases like this that … And it's not enough for him to say, I've paid this man good money to handle this case for me? Once he attempts to contact that lawyer and realizes that he can't find him, once he becomes suspicious that the lawyer is providing deficient performance, the alien then does need to take additional steps in order to exercise due diligence under both obvio de leon and Singh. And when did he get this information that his lawyer was dropping the ball? Again, as the court has mentioned, that is not entirely clear from the record, but it is Petitioner's burden to make that clear and to establish due diligence. Petitioner has the burden of showing due diligence in the motion to reopen context. The record doesn't say it all, does it? No, but it was Petitioner's obligation to present … I'm not saying it wasn't. I'm just saying the record doesn't seem to say it all. No. When he found out he couldn't find his lawyer, et cetera, et cetera, it doesn't say anything about that, does it? That is correct. You're not recognizing a lifeline. That is exactly the problem with the affidavit and why the due diligence question is entirely dispositive here. The Petitioner, there's simply no evidence as to when he became suspicious, and it was up to Petitioner to put forth that evidence. Let me ask you this. Since we had you just on the last case and we have you here, and you stated with certainty that in that one that you knew that the prior case, that the abstract ruled out that he could be an accessory after a fact, here you have the defendant's or the Petitioner's admission that he, quote, drove a car knowing it was stolen. Is that ambiguous enough for you to say that that would be consistent with accessory after the fact liability? No, for a few reasons. First, because this was not a People v. West plea, and additionally the language that he did plead to indicates that he exercised control over the vehicle, which has been interpreted under Martinez-Perez as the requirement for a theft offense. But he didn't. It could mean he didn't take the car. It means after the car was taken, he then got in the car. He knew someone had stolen it, but he drove it then. And he thus exercised control over the vehicle, knowing it was stolen, and had the intent to deprive, and those are the three elements of a theft offense. You're saying that no matter who took it, if he drove it, he's a principal. If he drove it knowing it was stolen, yes. By definition, he can't be an accessory. He's a principal because he's the one driving behind the wheel knowing that it's stolen. That is correct. So that may not be the only way to be convicted as a principal, but it is certainly a way, and it is established here. And additionally, the due diligence, it would be dispositive in any case. This case is simply disposed of on due diligence grounds, and unless the Court has any additional questions, I will rest there. Thank you, Ms. Clark. Mr. Pope, you've got about a minute and 40 seconds left. Thank you, Your Honor. If he's driving the car, regardless of who took it, if he's driving the car knowing it's stolen, why isn't he a principal? I think the elements of the predicate offense of theft do not exist in that circumstance. Did he intend to steal the car? If he simply knew the car was stolen when he got in. Driving the car knowing it's stolen. Exactly. Why isn't he a principal rather than an accessory? Because someone else stole the car. Okay, but he's not charged with taking. You're talking about driving. Okay. So why isn't he a principal under the driving prong? Because I think he fits much more clearly into an accessory after the fact. Well, you make it, but I mean, why isn't he a principal? He's actually driving. He's not helping somebody else drive it. He's not charged with helping somebody take it. He says, I physically am behind the wheel driving the vehicle. Yes, sir. Why isn't he a principal? I would fall back on the same argument that Mr. Neumeister made. It is the same, almost the same situation. You have an individual who was picked up. Mr. Neumeister's case, we don't know whether he took or drove. Yes, sir. Your case, we know he drove. He drove only. Okay, so that's a big difference. I believe so. I think that's what makes him an accessory after the fact. He came into this after the completed act, the act of taking the car. Now, it's a completed act. And he came along and drove the car, knowing it was stolen. I don't believe that makes him a principal. Okay. And one other point I would make to the Court on the due diligence issue, the moment that Mr. Salazar Carmona learned that his prior attorney had been suspended was about two years after he had filed the appeal. How do we know that? Pardon me? How do we know that? I'm sorry. It's not in the affidavit. It's in my notes from when I interviewed him. Well, you know, we're kind of blind. All we know is what's in the record. It's in our brief, Your Honor. Excuse me. All we know is what's in the record. Yes, sir. Your brief notwithstanding. We know what's in the record. How do we know when he discovered it? I'm sorry. Say it again, sir. I think you just told me the record doesn't tell us when he discovered it. It really doesn't. The record is not completely clear as to when he learned the fact that his lawyer had been suspended and then became suspicious. But he did become suspicious. Or when he learned he couldn't find the lawyer. Yes, Your Honor. All right. Thank you. Case is submitted. 0473479, Ulande v. Holder.
judges: Fernandez, Silverman, Callahan